UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MILTON D. RICKMAN,

        Plaintiff,                     Case No. 2:20-cv-223

v.                                   Honorable Paul L. Maloney

T. LAFOND et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Rule 21 of the Federal Rules of Civil Procedure, on motion by a party or on its own motion, the Court may at any time drop or add parties or sever a claim on grounds of misjoinder. *Id.* Upon review, the Court will drop Defendants J. Farley, Kowalski, Clark, Sevarns, Massey, Suriano, Dirschell, and Adams and dismiss the claims against them without prejudice on grounds of misjoinder.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, the Court will dismiss, for failure to state a claim, Plaintiff's complaint against the remaining, properly joined Defendants Lafond, S. Farley, Hubble, Bauman, and Russell.

## Discussion

I.  **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following NCF officials: Classification Director T. Lafond; Resident Unit Manager S. Farley; Administrator J. Farley; Deputy Warden A. Hubble; Wardens C. Bauman and H. Kowalski; Prisoner Counselor M. Clark; Business Manager G. Sevarns; Mailroom Clerk H. Massey; and Account Tech J. Suriano. Plaintiff also sues the following employees of the MDOC central office: Assistant Acting Special Activities Coordinator A. Dirschell; Special Activities Coordinator Steve Adams; and Grievance Coordinator Richard Russell.

Plaintiff's complaint involves four separate sets of allegations. In his first claim, Plaintiff alleges that he began working as a law clerk/aide on January 23, 2019. Plaintiff informed Librarian Supnik (not a Defendant) that he had a Legal Writer Certificate and believed he was entitled to be paid at level two of the advanced education/training pay scale (advanced level 2), rather than at level one of that pay scale (advanced level 1). Supnik informed Plaintiff that advanced level 2 pay was only available to those who have associate degrees or better. Believing that Supnik was wrong, Plaintiff sent a kite to Defendant Lafond, informed her of his Legal Writer Certificate and asking to be paid at the advanced level two pay grade. Defendant Lafond responded that Plaintiff had been hired as a law clerk, not a Legal Writer I, and therefore was only entitled to be paid at the advanced level one pay grade.

2

Plaintiff filed a Step-I grievance, claiming that he was being denied equal pay, because others in his job classification were paid at level two of the advanced education/training (advanced level two) pay scale, while he was being paid at level one of that pay scale. On February 28, 2019, and March 5, 2019, respectively, Defendants S. Farley and A. Hubble denied the grievance at Step I. The response indicated that, because Plaintiff was not hired as a law library aide before the adoption of the then-applicable version of MDOC Policy Directive (PD) 05.02.110 (eff. Oct. 1, 2018), he was not entitled to the pay classification at advanced level two, only at advanced level one. Only prisoners who were employed in the position and receiving the higher pay on the effective date were entitled to be paid at the higher level. Plaintiff appealed his grievance to Step II. On March 29, 2019, Defendant Bauman denied the grievance for the reasons provided at Step I. Plaintiff appealed to Step III. Defendant Russell denied the grievance on April 18, 2019, for the reasons given at Steps I and II. Plaintiff contends that Defendants[1] have denied him his right to equal protection of the laws by not paying him the same as other individuals who are similarly situated.

In his next set of allegations, Plaintiff complains that, on July 11, 2018, Defendant Kowalski denied his request to contact prisoners who were expected to be witnesses in Plaintiff's civil case that was set for trial in this Court, *Rickman v. Martin et al.*, No. 2:16-cv-101 (W.D. Mich.). (*See* 9/14/18 Step-I Grievance Resp., ECF No. 1-2, PageID.31.) According to the grievance response, the request was denied because the reviewer could not confirm that the prisoners that Plaintiff sought to contact were witnesses in the case.[2] (*Id.*) Plaintiff's Step-I

---

[1] In stating his causes of action, Plaintiff wholly fails to identify which Defendants he wishes to hold liable for which acts. Instead, he broadly alleges that all Defendants (mistakenly referenced as "Defendant's") are liable for all of the claims he brings.

[2] According to the grievance denial, Defendant Clark apparently thought he was calling the United States District Court for the Western District of Michigan when he called the United States District Court for the Eastern District of Michigan, at its Wayne County, Michigan, office. (Step-I Grievance Resp., ECF No. 1-2, PageID.31 ("The Western

3

grievance was denied by Defendants Clark and Hubble on September 5 and 14, 2018. Plaintiff appealed the grievance to Step II. Defendant Kowalski granted the grievance on October 30, 2018, and instructed Plaintiff to resubmit his prisoner correspondence. Defendant Kowalski's denial was confirmed by Defendant J. Farley. Plaintiff complains, however, that his trial date was set two weeks later, leaving him insufficient time to communicate with his prisoner-witnesses. He contends that the denials violated his First Amendment right to petition government.

Plaintiff next complains about a mail rejection on May 25, 2018. Apparently, certain legal mail that he had sent to the federal court was returned to him as undeliverable, because of an inaccurate address. The returned mail was opened outside Plaintiff's presence. Plaintiff filed a grievance, which Defendants Sevarns and Hubble denied at Step I, concluding that the mailroom had followed policy, as the mail was not sent by the court. The returned mail was rejected, because the paper used was yellow, though Plaintiff was offered the opportunity to put his document in a new envelope, a suggestion he refused. (7/17/18 Step-I Grievance Resp., ECF No. 1-4, PageID.35.) On August 2, 2018, Defendant Kowalski denied the grievance at Step II on August 31, 2018, substantially for the same reasons given at Step I. Although Plaintiff filed a Step-III grievance, he has never received a response. Plaintiff alleges that the opening of his legal mail violated his First Amendment right to petition government.

Plaintiff's fourth set of allegations are difficult to decipher from the complaint alone. The Court therefore has considered the allegations made in Plaintiff's associated grievances. In his Step-I grievance, Plaintiff alleged that, while Defendant Special Activities Coordinator Adams was touring the facility in October 2019, Plaintiff asked about the possibility

---

District of Michigan in Wayne County was contacted and this writer was advised that they were unable to confirm witness status in this case 2:16-cv-00101-GJQ-TPC.").)

4

of a holding a Saturday religious service for members of the Hebrew Israelite religion. Defendant Adams replied that Plaintiff should send his proposal and she would forward it to the appropriate office, in accordance with policy. On May 11, 2020, Defendant Bauman informed Plaintiff that this proposal had been denied. (5/12/20 Step-I Grievance, ECF No. 1-4, PageID.37; Compl., ECF No. 1, PageID.9.) Plaintiff filed a grievance on May 12, 2020, complaining that the religion is recognized, as established in his earlier case, *Rickman v. Martin*, No. 2:16-cv-101. On May 28, Plaintiff received a notification that a decision had not yet been made on his request and that he would be notified. Plaintiff filed a Step-II grievance, complaining that he had been notified of the denial by Bauman and S. Farley. He received a Step-II denial on July 16, 2020, informing him that the committee had not yet had an opportunity to meet because of COVID-19 concerns. The grievance response denied Plaintiff's request for the earlier email correspondence from Defendant Dirschell to the warden. Plaintiff contends that he is entitled to religious services and that the failure to allow services violates his rights to freely exercise his religion under the First Amendment and under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1.

Plaintiff seeks declaratory and injunctive relief, together with compensatory, punitive, and nominal damages.

II. **Misjoinder**

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will

5

arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142-43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

7

on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Plaintiff's first set of allegations involves the pay scale for Plaintiff's employment as a law clerk/aide. None of the other sets of allegations relate to that claim. Moreover, the first named Defendant in the action is Defendant Classification Director Lafond, the person who actually made the determination that, under PD 05.02.110 (eff. Oct. 1, 2018), Plaintiff was not entitled to the pay classification at advanced level two, only at advanced level one. Plaintiff also sues Defendants S. Farley, Hubble, Bauman, and Russell for their denials of his grievances at all three steps of the MDOC grievance procedure with respect to the claim about his pay. The alleged actions of remaining Defendants J. Farley, Kowalski, Clark, Sevarns, Massey, Suriano, Dirschell, and Adams are wholly unrelated to the actions of Defendant Lafond in denying Plaintiff's demand

8

to be paid at advanced level two. As a consequence, Plaintiff's claims against Defendants J. Farley, Kowalski, Clark, Sevarns, Massey, Suriano, Dirschell, and Adams are misjoined.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47.

9

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's fourth set of allegations, concerning the holding of group religious services, did not accrue until May 11, 2020, at the earliest, when Plaintiff learned that his proposal for the holding of a group service for Hebrew Israelites was denied. That claim is not at risk of being time-barred.

Plaintiff's second and third sets of allegations, however, accrued in 2018, placing them somewhat nearer the end of the limitations period. Claim two, involving his request to contact prisoner witnesses, accrued on July 11, 2018, the date on which his request was denied. However, he was entitled to tolling during the time he pursued his mandatory administrative remedies. *See Brown*, 209 F.3d at 596. According to the complaint, those remedies were exhausted on October 30, 2018, when Defendant Kowalski granted his Step-II grievance. Similarly, Plaintiff's third claim, concerning the opening of his outgoing mail to the court that had been returned as undeliverable, did not accrue until at least May 25, 2018, the date Plaintiff received the mail-rejection notice. Again, however, the limitations period was tolled until Plaintiff completed his administrative remedies. *Id.* Those remedies were exhausted sometime after September 10, 2018, when Plaintiff submitted his Step-III grievance appeal, to which he never received a response.

In light of his analysis, Plaintiff has about eight months before his period of limitations would begin to run on claim three, and about ten months on claim two. That is before the period of tolling to which he is entitled during the pendency of this action. *See Kalasho*, 66 F. App'x at 611. Thus, dropping Plaintiff's claims against Defendants J. Farley, Kowalski, Clark, Sevarns, Masey, Suriano, Dirschell, and Adams would not cause gratuitous harm to Plaintiff.

Accordingly, the Court will exercise its discretion under Rule 21 and dismiss Defendants J. Farley, Kowalski, Clark, Sevarns, Masey, Suriano, Dirschell, and Adams without

prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants.[3] *C.f. Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

III. **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. Twombly, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010)

---

[3] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another. Not all of the dismissed claims and Defendants would be properly brought in a single new action.

(holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendant Lafond violated his right to equal protection by determining that, under PD 05.02.110, Plaintiff was not entitled to be paid at advanced level two for his work as law clerk/aide, because he was not hired until January 24, 2019. Defendant Lafond explained that Plaintiff's hiring occurred well after the effective date of the October 1, 2018, version of the policy, which changed advanced level pay rates for certain positions, including Plaintiff's. Plaintiff alleges that certain other law clerks received pay at advance level two during the same period of time.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; his claims therefore are not subjected to strict scrutiny. Indeed, Plaintiff does not suggest that strict scrutiny applies. Instead, he alleges that the Defendants arbitrarily decided to deny him payment at the advanced level two pay scale for his law clerk position while others similarly situated were paid at the higher level.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10-11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.") (emphasis in original).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared

14

to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'") (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff alleges that other prisoners were paid at a higher level for performing the same job as Plaintiff. He also identifies two individuals as similarly situated comparators. The first is Kenneth Rideauz, whose affidavit is attached to the complaint. (Rideauz Aff., ECF No. 1-5, PageID.40.) Mr. Rideauz claims that he was first hired as a law clerk in 2016, and he immediately provided a copy of his paralegal certificate to the librarian. Yet Mr. Rideauz was not paid at the advanced level two pay grade until he complained in June 2019. After he filed his complaint, the classification department agreed that he should be paid at the higher level, but it only made his increased pay retroactive to the time of his complaint, not to his initial hire date. *Id.*

The second comparator that Plaintiff identifies is Prisoner Gray, who complained that he was reduced in pay in May 2019, despite having an associates degree in applied arts and sciences and a double bachelor of arts degree in behavioral science, with majors in psychology and sociology. Mr. Gray contended that, under PD 05.02.110, he was entitled to advanced level two pay. Plaintiff attaches a copy of the Step-I grievance response form authorizing back pay to Gray, finding that Gray's degrees rendered him eligible for advanced pay two.

15

Neither identified prisoner is similarly situated to Plaintiff.  Under the policy that became effective October 1, 2018, a prisoner who was employed as a law library aide prior to the effective date of the policy and was being paid at the advanced level two rate could continue to be paid at the advanced level two pay rate:

> A prisoner assigned as a Law Library Aide shall be paid at the first level of the advanced/education/training pay scale.  However, if prior to the effective date of this policy directive, a prisoner was assigned as a Law Library Aide and correctly received pay at the second level of the advanced education/training pay scale, that prisoner shall continue to be paid at the second level of that pay scale.  If the prisoner is reclassified to a different assignment, they will no longer be eligible for pay at the second level of the advanced education/training pay scale if they receive a Law Library Aide assignment at a different date.

MDOC PD 05.02.110 ¶ Y (eff. Oct. 1, 2018) (repeated in policy updates on August 1, 2019, and October 5, 2020).

According to Plaintiff's submissions, both Mr. Rideauz and Mr. Gray were employed as law clerks prior to the October 1, 2018, revision of PD 05.02.110.  Under the terms of the policy, both were eligible to be paid at the higher pay rate.  Plaintiff, in contrast, was not hired into his position until after the effective date of October 1, 2018.  He therefore was not similarly situated in all relevant respects to Prisoners Rideauz and Gray.  Because Plaintiff fails to identify similarly situated persons who were treated differently, his allegations fail to state an equal protection claim.

Moreover, even had Plaintiff's allegations been sufficient to support an equal protection claim against Defendant Lafond, his claims against Defendants S. Farley, Hubble, Bauman, and Russell would fail to state a claim.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional

violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants S. Farley, Hubble, Bauman, and Russell did anything more than deny Plaintiff's grievances or supervise their subordinates. He therefore fails to allege that they engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against Defendants S. Farley, Hubble, Bauman, and Russell for this additional reason.

## Conclusion

Applying the standards of Fed. R. Civ. P. 20(a)(2), the Court determines that Plaintiff's claims against Defendants J. Farley, Kowalski, Clark, Sevarns, Masey, Suriano, Dirschell, and Adams are misjoined. Therefore, under Fed. R. Civ. P. 21, the Court will drop these Defendants and dismiss the claims against them without prejudice. In addition, having conducted the review required by the Prison Litigation Reform Act, Plaintiff's complaint against remaining Defendants Lafond, S. Farley, Hubble, Bauman, and Russell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        A judgment consistent with this opinion will be entered.


Dated:   February 4, 2021                /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge